Anthony J. Wright
P715875 / 3B2.07
3250 W Lwr Buckeye Rd
Phoenix, AZ 85009

FILED ___ LODGED
___ RECEIVED ___ COPY
SEP 2 7 2019
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ANTHONY JERONE WRIGHT<br>PLAINTIFF,<br><br>V.<br><br>PAUL PENZONE, et al.,<br>DEFENDANTS | CASE NO. CV-17-04161-PHX-SMB (DMF)<br><br>PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT<br><br>(THE HONORABLE SUSAN M. BRNOVICH)<br>(THE HONORABLE DEBORAH M. FINE) |

1) COMES NOW THAT THE PLAINTIFF ANTHONY J. WRIGHT IN PRO SE STATUS IN
2) OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT WILL TRY TO SHOW THE
3) HONORABLE COURT WHY DEFENDANTS MOTION SHOULD NOT BE GRANTED ON ANY OF THE
4) COUNTS UNDER RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURES AS IT RELATES
5) TO COUNT 1 OF THE PLAINTIFF'S COMPLAINT FOR CONDITIONS OF CONFINEMENT.
6)    FACTS:
7)    THE PLAINTIFF IN THE ABOVE MENTION CASE NEVER SAUGHT OUT A COMPLAINT UNTIL
8) THE JAIL (M.C.S.O) LAWYERS, RESPONDING TO MY CRIMINAL DEFENSE LAWYER
9) DAVID CUTRER'S MOTION ON RULE 8, A.R.C.P SPEEDY TRIAL RIGHTS AND HEARING
10) TO DETERMINE THE CONSTITUTIONALITY OF MCSO'S SOLITARY CONFINEMENT, DATED
11) AUGUST 7, 2017
12)    MARICOPA COUNTY DEPUTY ATTORNEY JOSEPH J. BRANCO RESPONDED, DATED
13) AUGUST 25, 2017, BY CITING SEVERAL CASE LAWS, AND ON PAGE 3 AND 4 OF HIS
14) MOTION IN (EXHIBIT A) HE STATED:
15)    " THE SHERIFF IS NOT A PARTY TO [THE DEFENDANTS] CRIMINAL PROCEEDING,
16) AND WHETHER THE CONDITIONS OF [HIS] CONFINEMENT VIOLATE [HIS] CONSTITUTIONAL
17) RIGHTS IS NOT PROPERLY AT ISSUE IN THAT PROCEEDING." INSTEAD, WRIGHT
18) CAN RAISE THAT ISSUE IN A CIVIL SUIT UNDER 28 U.S.C. § 1983
19)    JOSEPH J. BRANCO CONCLUSION ON PAGE 4 STATES:
20)    WRIGHT COMPLAINS ABOUT THE CONDITIONS OF HIS CONFINEMENT. AN ENTIRE
21) BODY OF LAW BASED ON SECTION 1983 POTENTIALLY PROVIDES HIM THE RELIEF HE SEEKS.
22) A CRIMINAL COURT'S POWERS UNDER STATE LAW DO NOT.
23)    HE STATED, HIS MOTION IS BY: /S/ JOSEPH J. BRANCO
24)                                  ATTORNEY FOR MARICOPA COUNTY
25)                                  SHERIFF PAUL PENZONE

(1)

1) HERE, IN THESE TWO MOTION FILED IN THE PLAINTIFF'S CRIMINAL CASE, THE COURT
2) CAN WEIGH IN SEVERAL FACTORS:
3)   1. THE PLAINTIFF SOUGHT THROUGH A 1983 CIVIL COMPLAINT, THAT WAS RECOMMENDED
4) BY THE SAME CIVIL SERVICES DIVISION, WHO NOW CHALLENGE IT.
5)   2. THAT SHERIFF PENZONE & CPT VALE HAVE BEEN AWARE OF PLAINTIFF WRIGHTS CONDITIONS
6) OF CONFINEMENT FOR SEVERAL YEARS
7)   3. THAT PLAINTIFF'S COMPLAINT WAS VIEWED AT THE HIGHEST LEVEL.
8) AND THIS IS ONE IN MANY FACTORS WHY SUMMARY JUDGMENT SHOULD NOT BE GRANTED
9) TO THE DEFENDANTS
10)
11) IN MANY CIRCUMSTANCES THE COURTS HAVE HELD THAT EXHAUSTION IS
12) SATISFIED WHEN NON-GRIEVANCE COMPLAINTS WERE VIEWED AT THE HIGHEST LEVEL
13) SEE CAMP V. BRENNAN, 219 F.3D 279, 280 (3D CIR. 200) HOLDING THAT USE OF
14) FORCE ALLEGATION REPORTEDLY INVESTIGATED AND REJECTED BY SECRETARY OF
15) CORRECTION'S OFFICE NEEDED NO FURTHER EXHAUSTION)
16) FRANKLIN V. ONEIDA CORRECTIONAL FACILITY, 2008 WL 2690243, *7 (N.D.N.Y.
17) JULY 1, 2008) (DENYING SUMMARY JUDGEMENT WHERE PRISONER'S LETTER TO THE
18) COMMISSIONER PROMPTED AN INVESTIGATION THAT MIGHT HAVE MADE A GRIEVANCE
19) REDUNDANT)
20) ROLAND V. MURPHY 289 F. SUPP. 2D 321, 324 (E.D.N.Y. 2003) COMPLAINTS
21) TO THE SHERIFF'S DEPARTMENT INTERNAL AFFAIRS UNIT AND DISTRICT ATTORNEYS
22) OFFICE GAVE "AMPLE OPPORTUNITY" TO ADDRESS COMPLAINT INTERNALLY)
23)   THERE ARE DIFFERENT TYPES OF COMPLAINTS THAT MEET THE EXHAUSTION
24) REQUIRMENT, THE SUPREME COURT, IN DISCUSSING CONGRESS' PURPOSE IN
25) REQUIRING EXHAUSTION, SAID THAT "CONGRSS AFFORDED CORRECTIONS OFFICIALS
26) TIME AND OPPORTUNITY TO ADDRESS COMPLAINTS INTERNALLY BEFORE ALLOWING THE
27) INITIATION OF A FEDERAL CASE." PORTER V. NUSSLE, 534 U.S. 516, 525, 122 S.
28) CT. 983 (2002)
29)   PRISON OFFICIAL ACTUALLY REVIEW YOUR COMPLAINT, AND THEY HAVE THE OPPORTUNITY
30) TO ADDRESS THE COMPLAINT INTERNALLY, AND THERE FOR THE EXHAUSTION REQUIREMENT
31) SHOULD BE SATISFIED
32)
33)   IF THIS IS NOT ENOUGH TO SHOW THE COURT WHY SUMMARY JUDGMENT SHOULD NOT
34) BE GRANTED TO THE DEFENDANTS THE PLAINTIFF HAS A LIST OF OTHER FACTS
35) THAT WILL NOW POINT OUT TO THE COURTS
36)   IN 2015 PLAINTIFF WAS THREATEN BY STAFF HAD GRIEVANCE DISAPPEAR
37) AND WROTE A LETTER TO THE CAPTAIN OF THE JAIL. THAT I.L.S OPENED AND
38) READ BUT DID NOT FORWARD TO THE CAPTAIN. THE THREATS AND INTIMIDATION
39) GOT SO BAD THAT MY FAMILY CALLED THE SHERIFF'S OFFICE AND A LT. SMITH
40) CAME TO SEE ME, AN SAID THE D.O (DETENTION OFFICER) IN QUESTION WAS NO LONGER
41) ABLE TO INTERACT WITH ME.   (EXHIBIT B)
42)   HEMPHILL V. NEW YORK, 380 F.3D 680, 690 (2D CIR 2004) (NOTING THAT A PRISONER
43) MAY BE WELL DETERRED FROM FILING AN INTERNAL GRIEVANCE BUT NOT FROM GIVING TO
44) INDIVIDUALS IN A POSITIONS OF GREATER AUTHORITY IN THE PRISON SYSTEM, OR TO
45) EXTERNAL STRUCTURES OF AUTHORITY SUCH AS STATE OR FEDERAL COURTS)
46)   OTHER COURTS HAVE ENDORSED THE HEMPHILL HOLDING AFTER THE DICISION IN WOODFORD, SEE
47) TURNER V. BURNSIDE, 541 F.3D 1077, 1085 (11TH CIR 2008) KABA V. STEPP, 458 F.3D 678, 684-85
48) (7TH CIR. 2006);

1) HERNANDEZ V. SCHRIRO, 2006 WL 2989030, *4 (D. ARIZ., OCT. 18, 2006);
2) JAMES V. DAVIS, 2006 WL 2171082, *16-17 (D.S.C. July 31, 2006); STANLEY V. RICH,
3) 2006 WL 1549114, *2 (S.D. GA., June 1, 2006) (STATING "THREATS OF VIOLENT REPRISAL
4) MAY, IN SOME CIRCUMSTANCES, RENDER ADMINISTRATIVE REMEDIES "UNAVAILABLE" OR
5) OR OTHERWISE JUSTIFY AN INMATES FAILURE TO PURSUE THEM")
6) PLAINTIFF WILL ATTEMPT TO PROVE TO THE HONORABLE COURT THAT IN 2015
7) TO 2016 PLAINTIFF WAS HARASSED AND RETALIATED ON AND THREATENED
8) (ALSO IN EXHIBIT B)
9)
10) IN OPPOSITION OF DEFENDANTS SUMMARY JUDGEMENT BY PARAGRAPH
11) DEFENDANTS, I INTRODUCTION AND STATEMENT OF FACTS, PAGE (2) OF DEFENDANTS
12) MOTION: PLAINTIFF WRIGHT WAS BOOKED IN MARICOPA COUNTY JAIL ON NOV 16, 2010
13) AND NOT NOV 17, 2010 AS DEFENDANT STATE. AND PLAINTIFF WRIGHT WAS CHARGED WITH
14) CONSPIRACY TO SALE MARIJUANA, AND PLACED IN GENERAL POPULATION, AND HIS BOND WAS
15) INFACT 2 MILLION
16) PLAINTIFF WRIGHT WAS PAGED 2^D AND MOVED TO SOLITARY CONFINEMENT
17) ON NOV 21, 2010 5 DAYS AFTER ARRIVING AT M.C.S.O AND WAS CHARGE WITH FELONY
18) MURDER WITH 3 COUNTS AND ONE WAS AN OFFICER.
19) DEFENDANTS STATE BECAUSE OF THE NEW CHARGES I WAS PLACED IN CLOSED CUSTODY
20) HOUSING
21) HERE LIES JUST ONE PROBLEM OF MANY THE COURTS SHOULD CONSIDER: PLAINTIFF
22) WRIGHT WAS NOT A HURT, HARM OR DANGER TO STAFF OR OTHER INMATES OR DID
23) HE HAVE ANY DOCUMENTED HISTORY OF SUCH AS THE D.I. 1 POLICY STATES
24) PLAINTIFF WRIGHT HAS NEVER BEEN TO PRISON OR HAD A FELONY "EVER" PRIOR
25) TO THIS ARREST, FURTHERMORE AS STATED BY: JOESPH J. BRANCO MARICOPA
26) COUNTY CIVIL SERVICE DIVISION (EXHIBIT A) ATTORNEY FOR SHERIFF PAUL PENZONE
27) PAGE (3) OF HIS MOTION See Also A.R.S. § 31-101. AND ARIZONA'S APPELLATE
28) COURTS HAVE MADE CLEAR THE SEPERATION OF POWERS BETWEEN THE SUPERIOR COURT
29) AND THE SHERIFF WITH REGARD TO HOUSING.
30) THEN ON THE SAME PAGE (3) LINE 21-22 AND PAGE (4) LINE 1 AND 2
31) THE SHERIFF IS NOT A PARTY TO [THE DEFENDANT'S] (PLAINTIFF WRIGHT) CRIMINAL
32) PROCEEDING, AND WHETHER THE CONDITIONS OF [HIS] CONFINEMENT VIOLATE [HIS] CONSTITUTIONAL
33) RIGHTS IS NOT PROPERLY AT ISSUE IN THAT PROCEEDING." ID. INSTEAD, WRIGHT CAN RAISE
34) THAT ISSUE IN A CIVIL SUIT UNDER 28 U.S.C. § 1983
35) THE PLAINTIFF HAS READ CASE LAW IN BIRDINE V GRAY, 375 F. Supp. 2D 874, 879
36) (D. NEB 2005 (WHETHER THE ACTION WAS DONE FOR PUNITIVE PURPOSE, WAS RATIONALLY RELATED
37) TO A LEGITIMATE PURPOSE, AND WAS EXCESSIVE RELATIVE TO THAT PURPOSE) HERE THE PLAINTIFF
38) WAS PUT IN SOLITARY FOR PUNISHMENT, PLAINTIFF WILL SHOW THAT THE SHERIFF PENZONE
39) AS WELL AS CPT VALE AND THE DETENTION STAFF KEPT A POLICY HELD OVER FROM THE PRIOR
40) SHERIFF. ALL HAD REASON TO KNOW THAT THE CONDITIONS OF CONFINEMENT IN SOLITARY CREATED
41) A HIGH DEGREE OF RISK OF PHISICAL AND MENTAL HARM AND ACTED IN CONCIOUS DISREGARD
42) AND INDIFFERENCE TO THE RISK. THIS WAS INTENDED FOR PUNISHMENT AND WAS NOT
43) MERELY AN INCIDENT OF SOME OTHER LEGITIMATE PURPOSE AND IT RESULTED INJURY
44) TO PLAINTIFF. SEE (EXHIBIT C)
45) THE SHERIFF OFF IS NOT A PARTY TO MY CASE BUT TRACKS MY CASE AND ALSO IS

1) AWARE THAT PLAINTIFF WRIGHT IS NOT FACING THE DEATH PENALTY NOR HAS EVER
2) YET THERE ARE PEOPLE FACING CAPITAL PUNISHMENT IN GENERAL POPULATION WRIGHTS
3) BOND WAS DROPPED IN 2011 TO 1,000,000 SECURED IN 2011, YET THE SHERIFF'S
4) OFFICE KEPT IT YEARS LATER AT 3,000,000 DESPITE THE MINUTE ENTRY SHOWING
5) MY BOND WAS DROPPED (MINUTE ENTRY AUG 2011) IN (EXHIBIT C) YOU CAN SEE EVEN
6) 2012 THE SHERIFF'S OFFICE STATED HIGH BOND 3,000,000 WHEN IT WAS INFACT
7) REDUCED. AND THERE ARE PEOPLE IN GENERAL POPULATIONS WITH HIGH BONDS
8) THAT DO NOT HAVE TO GO THROUGH THE CONDITIONS OF CONFINEMENT FOR FACE
9) IN SOLITARY.
10)
11)     THE SHERIFF'S OFFICE DOES NOT KNOW THE VICTIMS OF EVERY CRIME, BUT
12) YET HELD THAT I WAS CHARGE WITH FELONY MURDER OF AN OFFICER FROM CHANDLER
13) CLEARLY SHOWS THAT THE SEPERATION OF POWER STILL EXIST. PLAINTIFF WRIGHT
14) HAD A HUNG JURY ON THE SAME COUNTS DURING TRIAL IN HIS CRIMINAL
15) CASE IN 2019. DURING THE VERDICT M.C.S.O SERGEANTS SET BY THE VICTIMS
16) TO INFACT MONITOR A CASE THAT THE SHERIFF'S ATTORNEY SAID THEY ARE NOT A
17) PARTY TO MY CRIMINAL PROCEEDINGS ( SEE F.D.P VERDICT IN WRIGHT'S CRIMINAL
18) TRIAL APRIL 2019) PLAINTIFF COULD NOT GET A COPY.
19)
20)     IN CLOSED CUSTODY, WRIGHT WAS HOUSED ALONE, WRIGHT COULD GET RELIGIOUS
21) VISIT AND LEGAL VISIT AS WELL AS MENTAL HEALTH VISITS CELL SIDE BUT FAMILY
22) WOULD HAVE TO VISIT VIA VIDEO MONITOR NO FAMILY CONTACT IN 9 YRS
23) DEFENDANTS STATED YOU COULD RECIEVE AND WRITE LETTERS. WHEN IN FACT
24) YOU CAN ONLY RECIEVE POST CARDS EVEN IN THIS PAPERLESS TIME WE LIVE IN
25) AND POST CARDS ARE THE HARDEST THING TO FIND.
26)     DEFENDANTS STATED YOU HAVE ACCESS TO LIBRARY, WHEN IN FACT LIBRARY
27) SENDS TWO RANDOM BOOKS AND 2 TO 5 MAGAZINES A MONTH OF DONATED
28) MATERIAL SOME DATED IN THE 1940's
29)     PLAINTIFF WRIGHT WAS ABLE TO TALK TO SOME INMATES IN THE VENTS BY
30) SCREAMING TO HAVE SOME FORM OF COMMUNICATION AND WOULD LEAVE STORE
31) ITEMS FOR INMATES WHO HAD NONE.
32)
33) A. HOUSING REVIEWS, REQUESTS AND TRANSITIONS
34) WRIGHT HAS ALWAYS ASKED FOR A HOUSING CHANGE TO BE ALLOWED TO GO TO G-P
35) WHERE PLAINTIFF WRIGHT SHOULD OF NEVER BEEN PUNISHED AND MOVED WITH
36) OUT CAUSING NOT 1 SAFETY ISSUE. IN 2016 CO-DEFENDANT DARNELL
37) JACKSON WAS IN THE 1HR POD AND WAS NOT ABLE TO TRANSITION TO G-P
38) HE WOULD COMPLAIN AS EVERYONE ELSE WOULD ABOUT COMING OUT AT ALL HOURS
39) OF THE NIGHT AND HAVING TO LOCK DOWN EVERY TIME A D.O DOES A WALK
40) IN WHICH WOULD SHORTEN HIS TIME. (D.OR WOULD NOT LET ME WRITE MR
41) JACKSON SO I COULD GET AN AFFIDAVIT FROM HIM AND DID NOT WANT TO MISS
42) DEAD LINE) ALSO IN 2016 PLAINTIFF WRIGHT HAD A TESTIFYING CO-DEFENDANT
43) ELDRIDGE GITTENS HOUSE IN 1HR POD AND DID NOT WANT TO BE PLACE BY HIM
44) IN WHICH THE JAIL WOULD OF DONE (PLEASE NOTE THE JAIL IN 2019 DID AWAY
45) WITH THE 1HR POD AND ALLOWED PLAINTIFF WRIGHT TO PLACED DIRECTLY IN G-P
46) IN WHICH IS WHAT HE HAS BEEN ASKING FOR) WHEN PLAINTIFF WRIGHT WAS
47) TOLD HE COULD TRANSITION TO G-P, HE RELEASED SOME PAPER WORK AND HAS
48) BEEN DOWN STAIRS HERE IN G-P SINCE MAY 2019 TICKET FREE AND WITH
49) MENTAL ISSUE TO DEAL WITH.
50)     THE TICKETS PLAINTIFF WRIGHT RECIEVED WERE MOSTLY IN A TIME WHEN
51) THEN PLAINTIFF WAS BEING RETALIATED ON (EXHIBIT B) AND REGARDLESS
52) WOULD NOT KEPT AN INMATE IN CLOSED CUSTODY.



(4)

1) INFACT, IF WRIGHT WAS IN GENERAL POPULATION NONE OF THE TICKETS
2) RECIEVE WOULD OF SENT HIM TO CLOSED CUSTODY IN THE 1ST PLACE.
3) PLAINTIFF WRIGHT HAS SEEN INMATES WITH STAFF ASSAULTS ALLOWED TO
4) GO BACK TO G.P.
5) DEFENDANTS HAS PLACED A D.A.R TICKET FROM 2018, WELL AFTER
6) MY COMPLAINT WAS PUT IN BUT FAILED TO MENTION TO COURTS THAT THE
7) POWDERY SUBSTANCE WAS INFACT MEDICATION THAT WILLIAM LONG, DEVONTE
8) SNEAD AND MYSELF ALL RECIEVE THE SAME TICKET EVEN AFTER MR. SNEAD
9) TOLD THE D.O'S THE MEDICATION WAS HIS.
10) B. EYESIGHT AND SLEEP
11) ON MAY 14, 2015, WRIGHT'S VISION WAS FAILING IS WHY HE WENT TO THE
12) DOCTOR. PLAINTIFF WRIGHT WAS UNAWARE THAT HIS VISION WAS DAMAGE
13) FROM LACK OF VITAMIN D AND/OR THE ARTIFICIAL LIGHT IN HIS ROOM
14) WRIGHT PUT IN A GRIEVANCE ABOUT THE LIGHTS ON JUNE 4, 2019 (EXHIBIT D)
15) PLAINTIFF WRIGHT PUT THIS GRIEVANCE IN ON 1ST SHIFT BECAUSE 2ND SHIFT
16) HAD BEEN RETALIATING ON ME FOR GRIEVANCES THROWING AWAY MY GRIEVANCE
17) THAT I HAD TO RE-PUT THIS THROUGH FAMILY TO THE SHERIFFS OFFICE
18) ALTHOUGH I PUT THE GRIEVANCE ON 1ST SHIFT 2ND SHIFT CAME AND SAID
19) I COULD NOT GRIEVE LIGHTS WHICH I FELT WAS AFFECTING MY EYES AND SLEEP
20) (SEE EXHIBIT D) MY VITAMIN D LEVELS WAS SO LOW AT ONE TIME THAT
21) PLAINTIFF REQUEST AN EXPERT FROM THE COURTS TO GET A MEDICAL EXPLANATION
22) FOR THE REDUCED EYE SIGHT.
23) ALSO IN (EXHIBIT D) PLAINTIFF WRIGHT WILL ENCLOSE A PICTURE THAT
24) SHOWS SOME TIMES COMPASSIONATE D.O'S DO TURN OFF THE LIGHTS AND DO
25) USE FLASH LIGHTS. IN THIS PHOTO ONLY THE REC PEN LIGHT IS SHOWN ON
26) WHEN INFACT ALL THE CELL LIGHTS WOULD OF LOOK JUST LIKE THE REC PEN
27) LIGHT. PLAINTIFF WRIGHT ASK ON NUMEROUS OCCASION FOR A TRUE PICTURE
28) TO SHOW HOW IT REALLY LOOKS WHEN ALL THE LIGHTS ARE ON AT NIGHT SO THE
29) COURTS COULD SEE BUT INSTEAD WAS JUST GIVEN 1 PICTURE WHEN ALL THE
30) DAY ROOM LIGHTS IN THE CELL WERE TURN OFF WHICH IS NOT THE NORM.
31) ALSO INCLUDED IN (EXHIBIT D) IS MENTAL HEALTH SHEETS FROM
32) THE EARLY YEARS TO THE LATER OF POOR OR DISTURBED SLEEP.
33) AND 4 PICTURES SHOWING THE COURTS THE DAY ROOM AND ROOM OF
34) PLAINTIFF WRIGHT DAY ROOM AND ROOM.
35) PLAINTIFF WOULD ALSO LIKE THE COURTS TO LOOK AT MENTAL HEALTH
36) SHEETS FROM WHAT I DATED 7/12/2015 BATE STAMP CHS 03171
37) 9/11/2015 BATE STAMP CHS 03145 THAT ARE ALSO IN EXHIBIT D
38) THE DEFENDANTS CAN CONFIRM DATE FROM BATE STAMPS (TO MANY OTHER PAPERS)
39) ON THESE TWO SHEETS THE COURTS CAN CLEARLY READ THE PROBLEM THE
40) PLAINTIFF'S BEEN HAVING WITH 2ND SHIFT AND A PROBLEM WITH THEM
41) THROWING AWAY MY GRIEVANCE'S. PLAINTIFF HAS MANY OTHER & HE WOULD
42) LIKE TO BRING TO TRIAL SO THE JURY CAN READ MY STATE OF MIND THROUGH OUT
43) THE TIME IN SOLITARY.

44) C. MCSO'S GRIEVANCE PROCESS AND WRIGHTS TO EXHAUST THE GRIEVANCE
45) PROCESS AS TO LIGHTING, SUNLIGHT AND LACK OF OUTDOOR RECREATION, LACK
46) OF OUTDOOR RECREATION, LACK OF FRESH AIR OR SUNLIGHT IN RECREATION AREAS,
47) OR LACK OF EXPOSURE TO SUNLIGHT.

1) PLAINTIFF WRIGHT ADDRESS THE GRIEVANCE ISSUE TO THIS PART OF
2) DEFENDANT'S MOTION AT THE BEGINNING OF HIS RESPONSE TO THE DEFENDANTS
3) MOTION AND HAS ENCLOSED IN (EXHIBIT D) WHERE A GRIEVANCE WAS
4) EXHAUSTED IF IT IS DEEMED NON GRIEVABLE. PLAINTIFF WRIGHT DID
5) INFACT RIGHT A GRIEVANCE ABOUT THE LIGHT IN HIS CELL. IF YOU LOOK
6) IN EXHIBIT B GRIEVANCE AMENDMENT D.O B2675 WHO CONTINUED
7) TO HARRASS ME UNTIL I GOT MY FAMILY TO CALL THE SHERIFF CALLED THE REC
8) THE HOUSING UNIT'S GENEROUS RECREATION AND SHOWER PROGRAM, I DID
9) INFACT GRIEVE THE REC PIN, BECAUSE SOME LEFT HUMAN WASTE IN THERE
10) AND THEY FORCED ME TO GO TO THAT REC PIN, IT OF COURSE DISAPPEARED
11) BUT 1ST SHIFT CALLED MAINTENANCE THE NEXT DAY TO CLEAN IT OUT AFTER
12) PLAINTIFF TALKING TO THE D.O'S ON 1ST SHIFT ABOUT WHAT TOOK PLACE THE
13) DAY PRIOR, PLAINTIFF COULD GET WITNESSES IF THE COURTS COULD GIVE HIM
14) PERMISSION
15) THE GRIEVANCE'S ABOUT LIGHT SHOULD OF MADE IT TO CPT VAIL SINCE
16) IT WAS H.is D.O THAT SAID IT WAS A SECURITY ISSUE (EXHIBIT D) OR
17) MAYBE NOT SINCE THEY WENT COMPLETLY UNCHECKED, I COMPLAINED ABOUT
18) 2ND SHIFT IN 2015 THROWING AWAY GRIEVANCE BUT DESPITE ALL THE ABOVE
19) I PERSONALLY HAVE CPT VAIL'S DESIGNEE RESPONDING ON CPT VAIL'S BEHALF
20) AND CPT VAIL HIMSELF RESPONDED DIRECTLY TO PLAINTIFF WRIGHT ABOUT
21) MOVING OUT OF CLOSE CUSTODY (EXHIBIT E) ON TANK ORDERS AND GRIEVANCES
22) SO PLAINTIFF'S IS UNSURE WHAT DEFENDANTS MEAN WHEN STATED THAT NONE
23) OF THE GRIEVANCES THAT VAIL RESPONDED TO REQUESTED THAT WRIGHT BE MOVED
24) OUT OF CLOSED CUSTODY. WRIGHT HAS WROTE CPT VAIL ON NUMEROUS OCCASIONS

25) II SUMMARY JUDGMENT STANDARD
26) PLAINTIFF OUTLINED IN THE BEGINNING OF THIS MOTION MANY REASON'S
27) WHY SUMMARY JUDGMENT SHOULD BE DENIED WITH CASE LAW AND PLAINTIFF
28) HAS EVIDENCE THAT PROVES SUMMARY JUDGEMENT SHOULD BE DENIED THROUGH
29) EXHIBITS AND FACTS

30)
31) III PLAINTIFF DID NOT GRIEVE CONTINUOUS LIGHTING IN HIS CELL, THE
32) LACK OF FRESH AIR OR SUNLIGHT IN OUTDOOR RECREATION AREAS, OR LACK OF
33) EXPOSURE TO SUNLIGHT
34) (EXHIBIT D) POINTS TO ONE OF MANY GRIEVANCE'S NOT EXCEPTED ALSO
35) IN THIS SAME EXHIBIT PLAINTIFF WRIGHT IS TALKING TO MENTAL HEALTH
36) ABOUT 2ND SHIFT THROWING AWAY GRIEVANCE'S THAT WERE RELATED TO
37) REC, SHOWER, DIZZY SPELLS BROUGHT ON FROM LACK OF VITAMIN D AND/OR
38) SUN LIGHT.

39) IV. CONDITIONS OF CONFINEMENT.
40) THE REQUIRED SHOWING OF DELIBERATE INDIFFERENCE WAS MET, WHEN
41) PLAINTIFF DID NOTHING TO BE CONFINED TO THE CONDITIONS OF SOLITARY FOR NO
42) OTHER REASON BUT HIS CHARGE'S THAT THE JAIL FOUND HIM GUILTY OF, WHILE A JURY
43) OF MY PEERS GAVE ME A HUNG JURY, DESPITE THAT THE ADMINISTRATION KNEW FROM
44) THE HIGHEST LEVEL BEFORE MY CIVIL SUIT (EXHIBIT A) THAT PLAINTIFF WRIGHT WAS
45) NOT STABLE BEING LOCKDOWN SO LONG AND WANTING TO GO DIRECTLY BACK DOWN
46) TO G-P THE WAY I WAS BROUGHT UPSTAIRS TO SOLITARY, WHICH WAS FINALLY MET
47) IN MAY 2019, WHAT SHOULD OF TOOK PLACE, IN 2010, 2011, 2012, 2013, 2014, 2015, 2016
48) 2017, 2018 AND NOT PUNISHED SOLEY FOR MY CHARGES THAT I AM INNOCENT UNTIL
49) PROVEN GUILTY

1) PLAINTIFF BELIEVES NOW AS HE DID THEN IN 2010 THAT PLAINTIFF WAS
2) PUNISHED FOR A CRIME HE DID NOT COMMIT, INFACT PLAINTIFF WAS CHARGED
3) WITH FELONY MURDER, IN 2012 IN (EXHIBIT C) GRIEVANCE #12-02591 IT
4) ALL BUT SPELLS IT OUT THEY EVEN INDICATE MY BOND WAS $1,000,000 WHEN INFACT
5) IT WAS 1,000,000 SECURED LOWER THEN WHEN I 1ST ARRIVED IN G-P SO WHEN
6) DEFENDANTS FOLLOW THE SAME EXAMPLE AS THE OLD SHERIFF THEY TOO PUNISHED
7) THE PLAINTIFF. NOW THAT PLAINTIFF IS IN G-P PLAINTIFF HAS HAD NOT ONE PROBLEM
8) NOR SECURITY ISSUE THAT WARRANT HIM FROM BEING PUT IN SOLITARY IN THE
9) 1ST PLACE. THIS IS A VIOLATION OF PLAINTIFF'S 14TH AMENDMENT AND A DIRECT
10) PUNISHMENT OF THIS PRETRIAL DETAINEE. EXACTLY WHAT CASE LAW PROHIBITS.
11)     A. 23 HOUR LOCKDOWN
12) DEFENDANTS CLAIM HERE THAT PLAINTIFF WRIGHT WAS HOUSED IN CLOSED CUSTODY
13) FOR SECURITY REASONS BUT YET, FAIL TO STATE WHAT SECURITY ISSUE. ESPECIALLY
14) SINCE PLAINTIFF WRIGHT STARTED IN G-P AND ONLY WHEN PAGE 2ID FOR OTHER CHARGES
15) WAS HE MOVED. THE DEFENDANTS STATE WHEN PLAINTIFF WRIGHT WAS BOOKED, THEY
16) LOOK AT HIS BOND, HAVING 4 OR MORE FELONY ARRESTS AND A SERIOUS OFFENSE HISTORY.
17) WRIGHT WAS BOOKED IN 4TH AVE WITH 1 CHARGE, NEVER HAD A FELONY PRIOR
18) AND NEVER HAD A HISTORY OF ANY SERIOUS OFFENSE, THE CHARGE WAS CONSPIRACY
19) TO SALE MARIJUANA, AND FOR THIS ONE CHARGE MY BOND WAS SET AT 2,000,000
20) BECAUSE THE CRIMINAL CASE WAS POLITICAL, ENVOLVING A POLICE OFFICER, PLAINTIFF
21) WRIGHT HAD 8 CO-DEFENDANTS AND FOR THE DEFENDANTS TO OUT RIGHT GIVE
22) THE COURTS FALSE INFORMATION IS UNETHICAL IN THE OUT LINED ABOVE. THE ONLY
23) TRUTH WAS MY BOND WAS EXTREMELY HIGH FOR THE CHARGE OF CONSPIRACY TO SALE
24) MARIJUANA.
25)     THE DEFENDANTS CLAIM OF SAFETY AND SECURITY IS AN EXCUSE FOR A EXCUSE
26) TO ENABLE THEM TO GET AWAY WITH PUNISHMENT FOR CHARGES IN CRIMINAL CASES
27) THAT THE SHERIFF'S OFFICE IS NOT A PARTY TO.
28)     THE DEFENDANTS STATE THAT WRIGHT SAID HE HAD NO DISCIPLINARY HISTORY
29) WHEN INFACT YEARS OF SOLITARY LATER WRIGHT DID RECIEVE TICKETS BUT
30) KNOWN WOULD OF KEPT HIM FROM G-P AND MOST WAS FOR RETALIATION
31) THAT WRIGHT NOT BEING A PROPHET NOR WITH ANY INTENTIONS OF FILING A 1983
32) CIVIL COMPLAINT, WENT TO THE ADMINISTRATION ON NUMEROUS OCCASSIONS. SEE
33) (EXHIBIT B) MOST ARE FOR BEING IN MY DAY ROOM, WHICH IS AN EXTENSION OF
34) MY ROOM FOR MEDICAL REASONS DIZZINESS FOR LACK OF VIATIM D. THE SO CALLED
35) MANUFACTURE/POSSESSION OF SUSPECTED NARCOTICS/PROMOTION OF PRISON CONTRABAND,
36) WAS ACTUALLY MEDS FROM THE NURSE, IN WHICH 3 PEOPLE GOT TICKETS ON
37) THIS DAY IN 2018 ONE OF WHICH SAID THE MEDICATION WAS HIS.
38)     THIS IS ONE OF MANY TRICKERY THE DEFENDANTS ATTORNEY A MARICOPA
39) COUNTY ATTORNEY AT THAT. IF THESE WERE INFACT REAL NARCOTICS PLAINTIFF WRIGHT
40) WOULD OF BEEN CHARGED, BECAUSE WHAT WAS FAIL TO BE MENTION TO THE COURT, THEY
41) WERE TESTED. AND PLAINTIFF HAS NOT RECIEVED ANY TICKETS SINCE THEN. PLEASE
42) NOTE: THERE ARE PEOPLE WHO BEEN HERE 2 YRS IN G-P WHO HAVE TWICE AS MANY
43) TICKETS SOME FOR VIOLENCE AND JUST SENT TO THE HOLE ON THE 2ND TIR AND BROUGHT
44) RIGHT BACK TO G-P.
45)     DEFENDANTS STATE, ALTHOUGH WRIGHT ALLEGES THAT HAS MEDICAL CONDITIONS
46) AS A RESULT OF BEING CONFINED TO HIS CELL FOR 23 HOURS PER DAY, HE HAS DISCLOSED
47) NO MEDICAL CONDITION     (7)    PLEASE SEE (EXHIBIT F)

1) IN (EXHIBIT F) PLAINTIFF WRIGHT HAS EVIDENCE IN THE FORM OF
2) GRIEVANCE'S AND H.N.R (HEALTH NEEDS REQUEST) THAT CAN DIRECTLY LINK MEDICAL
3) CONDITIONS, FROM BACK PROBLEMS FROM SLEEPING ON A CONCRETE SLAB WITH A 2 INCH
4) MATRESS TO DIZZY SPELLS AND BLURRED VISION IN NOT JUST MY LEFT EYE BUT MY RIGHT
5) EYE'S AS WELL, WITH TWO DIFFERENT VISION IN EACH EYE BROUGHT ON BY LACK OF VITAMIN
6) D AND ARTIFICIAL LIGHTS. PLAINTIFF WRIGHT HAS NUMEROUS PROBLEM RELATED TO MEDICAL
7) CONDITIONS HE CAN BRING UP IN TRIAL ALONG WITH BE CHRONIC CARE WITH MENTAL HEALTH
8) FROM THE LONG DRAWN OUT AFFECTS OF SOLITARY CONFINEMENT. PLAINTIFF WRIGHT HAS
9) NEVER GOT A TICKET FOR INSTITUTIONAL BEHAVIOR BUT INFACT WOULD LIKE THE COURT TO
10) KNOW, THAT SOLITARY CONFINEMENT WAS DRIVING ME CRAZY, THIS IS ONE REASON PLAINTIFF
11) WRIGHT'S CRIMINAL LAWYER (DAVID CUTRER) RECOMMENDED I NOT TAKE THE STAND
12) DURING CRIMINAL TRIAL, THE SAME CHARGE'S THAT WRIGHT RECIEVED A HUNG JURY
13) FOR THE SAME CHARGE'S THE SHERIFF OFFICE'S VIOLATED MY CONSTITUTIONAL RIGHTS
14) AND PUNISHED ME FOR.
15)    1. WRIGHT'S CLAIMS REGARDING HIS HOUSING ASSIGNMENTS PRIOR TO
16) NOVEMBER 9, 2015, ARE BARRED BY THE TWO-YEAR STATUE OF LIMITATIONS.
17)    UNDER FEDERAL LAW, A CLAIM ACCRUES "WHEN THE PLAINTIFF KNOWS OR HAS REASON
18) TO KNOW OF THE INJURY WHICH IS THE BASIS OF THE ACTION. KIMES V STONE,
19) 84 F.3D 1121, 1128 (9TH CIR. 1996) PLAINTIFF WRIGHT DID NOT KNOW THAT A 1983
20) CIVIL COMPLAINT EXSISTED UNTIL THE SHERIFFS LAWYER POINTED IT OUT ON HIS
21) MOTION IN (EXHIBIT A) AND THE PUNISHMENT FOR IN WHICH THE JAIL INFLICTED
22) ON PLAINTIFF WRIGHT WAS ON GOING NON-STOP
23)    PLAINTIFF WRIGHT WAS IN JAIL AND NOT CONVICTED OF ANYTHING IN WHICH
24) NOW PLAINTIFF WRIGHTS DUE PROCESS WAS VIOLATED. COURTS HAVE GENERALLY HELD
25) THAT THE RULE OF SANDIN V. CONNER DOES NOT APPLY TO PRETRIAL DETAINEE'S IN
26) IQBAL V. HASTY, 490 F.3D 143, 162-63 (2ND CIR. 2007); SURPRENANT V RIVAS, 424
27) F.3D 5.17 (1ST CIR. 2005); PEOPLES V. CCA DETENTION CENTERS, 422 F.3D 1090, 1106 N.2 (10TH
28) CIR. 2005) (SANDIN LEAVES BELL V WOLFISH WHICH GOVERNS DETAINEES' RIGHTS, UNTOUCHED),
29) VACATED IN PART ON OTHER GROUNDS, 449 F.3D 1097 (10TH CIR 2006); VALDEZ V. ROSENBAUM,
30) 302 F.3D 1039, 1044 N.3 (9TH CIR 2002); BENJAMIN V. FRASER, 264 F.3D 175, 188-89 (2D
31) CIR 2001); FUENTES V. WAGNER, 206 F.3D 335, 342 N.9 (3RD CIR 2000); RAPIER V HARRIS, 172
32) F.3D 999, 1004-05 (7TH CIR. 1999); MITCHELL V. DUPNIK, 75 F.3D 517, 523-24 (9TH CIR. 1995)
33) (HOLDING THAT SINCE SANDIN IS BASED ON "THE EXPECTED PARAMETERS OF THE SENTENCE IMPOSED
34) BY A COURT OF LAW," DETAINEES ARE ENTITLED TO A DUE PROCESS HEARING BEFORE BEING RESTRAINED
35) FOR REASONS OTHER THAN TO ASSURE THEIR APPEARANCE AT TRIAL). CONTRA, CEPHAS V. TRUITT, 940 F
36) SUPP. 674, 680 (D. DEL. 1996)
37)    SOME COURTS EVEN HELD THAT DETAINEE'S ARE ENTITLED TO A DUE PROCESS HEARING IF
38) THEY ARE THREATENED WITH PUNISHMENT. IQBAL V HASTY, 490 F.3D 143, 165 (2ND CIR 2007)
39) HOLDING THAT DETAINEE WAS ENTITLED TO PROCEDURAL PROTECTIONS BASED DIRECTLY UPON DUE
40) PROCESS CLAUSE WHERE HE WAS SUBJECTED TO THE CONDITIONS SO HARSH AS TO COMPRISE PUNISHMENT,
41) AS WELL AS UNDER FEDERAL REGULATIONS THAT CREATED A LIBERTY INTEREST, REGARDLESS OF DEFENDANTS
42) PUNITIVE INTENT. ASHCROFT V. IQBAL U.S. 129 S. CT. 1937 (2009); SURPRENANT V. RIVAS, 424 F.3D
43) 5,17 (1ST CIR 2005) HOLDING DETAINEES HAVE A LIBERTY INTREST IN AVOIDING PUNISHMENT) HOLLY V
44) WOOLFOLK, 415 F.3D 678, 679-80 (7TH CIR 2005), NOTING HOLDINGS THAT "ANY NONTRIVIAL PUNISHMENT
45) OF A PERSON NOT YET CONVICTED [IS] A SUFFICIENT DEPRIVATION OF LIBERTY TO ENTITLE HIM TO DUE
46) PROCESS OF LAW); RAPIER V. HARRIS, 172 F.3D AT 1005 (APPLYING BELL V. WOLFISH PUNISHMENT
47) ANALYSIS TO DUE PROCESS CLAIM); MITCHELL V DUPNIK, 75 F.3D 517, 523-24 (9TH CIR. 1995); ZARNES

1) v. Rhodes, 64 F.3d 285, 292 (7th Cir. 1995). The First Circuit has held that
2) detainees are denied due process when they are punished as a result of false charges
3) made by staff members with the intent to cause them to be punished. Suprenant v.
4) Rivas, 424 F.3d at 13-14
5)      No matter where the defendants try to spin every turn to why, where or
6) how Plaintiff Wright was put in solitary for security reason, without having any
7) and now with the same charges, yet, am now in G-P, brought directly from solitary
8) Plaintiff Wright was punished for his charges some then federal law prohibits

### B. Sunlight

10) Staffing limitations has nothing to do with getting more rec since rec and
11) showers are finished within 3 hrs on any given shift furthermore to go to rec
12) you are just put inside a room with a camera no D.O. ever sits and waits
13) on you. In (Exhibit G) the court can tell that unless you catch the sun at the
14) earliest rising, you would have to stand by the wall to catch any sun rays at an
15) hour that we are no permitted to rec. Regardless it so dark in the rec pin
16) the lights are kept on 24/7. The rec pin is covered and it only has a slit
17) in the corner the covering is gray. The covering and the slit are so high you
18) never get direct sunlight. As far as fresh air the slit allows outside air in
19) although the rec pin is hardly ever cleaned unless a pretrial detainee does it so
20) the drain always smells like urine or human waste because mental health detainees
21) and at time not mental health detainees use the rec as a rest room

### C. Lighting

23) Defendants claim that constant illumination is not per se unconstitutional
24) when infact some courts have held that constant lighting is unconstitutional; Keenan
25) v. Hall, 83 F.3d at 1090 ("Moreover, there is no legitimate penological justification for
26) requiring [inmates] to suffer physical and psychological harm by living in constant illumination.
27) This practice is unconstitutional."), 135 F.3d 1318 (9th Cir. 1998); King v. Frank, 328 F. Supp.
28) 2d 940, 946-47 (W.D. Wis. 2004) (constant illumination may violate the Eight Amendment
29) if it causes sleep deprivation or leads to other serious physical or mental health problems)
30) LeMaire v. Maass, 745 F. Supp. 623, 636 (D. Or. 1990) 12 F.2d 1444 (9th Cir. 1993) (holding
31) that keeping cell lights on 24 hours a day in segregation cells is unconstitutional).
32)      In Shepherd v. Ault, the court noted that "the effectiveness of sleep deprivation
33) as a tool of torture has long been recognized." 982 F. Supp. at 648 (citing Reck v. Pate, 367
34) U.S. 433, 81 S. Ct 1541 (1961) (recognizing deprivation of food and sleep as unconstitutional
35) punishment) and Ashcraft v. Tennessee, 322 U.S. 143, 150 N.6, 64 S. Ct 921 (1944) ("It has been
36) known since 1500 at least that deprivation of sleep is the most effective torture and
37) to produce any confession desired," quoting Report of Committee on Lawless Enforcement of
38) Law, Section of Criminal Law and Criminology of the American Bar Association, 1 American
39) Journal of Police Science 575, 579-80 (1930)).
40)      In (Exhibit D) Section 1 clearly shows that Plaintiff Wright tried to grieve
41) the lights on 1st shift and 2nd shift (who he had numerous problems throughout this same
42) period (Exhibit C) Plaintiff complained to the highest levels,) so, defendants make statements
43) that I the Plaintiff can prove are false, another false statement is lights are left on
44) for security, when in (Exhibit D) Section 3 the court and any other defendant can see the
45) lights are off everywhere except the rec pin on a night like this one D.O.'s would
46) use flash lights but most D.O. do not even check in the room they speed past the rooms
47) in the fastest walk possible to get back to a novel or whatever they were doing
48) before the walk (please see any night video prior to this motion, no doubt they will be now told
49) to actually look in the rooms not just for count. Some officers do shine flash lights in

(9)

1) THE ROOM WHEN THE LIGHTS ARE OFF JUST LIKE THE NIGHT IN QUESTIONED AND IF
2) PLAINTIFF COULD REACH MOST OF HIS LISTED WITNESSES (SOME IN D.O.C) WITHOUT BEING
3) RAILROADED OR GET STRAIGHT ANSWER, (IN WHICH WITH HELP PLAINTIFF IN TRIAL)
4) FROM DEFENDANTS THE COURTS CAN SEE HOW DECEPTIVE THE DEFENDANTS ARE BEING
5) OR SO FAR OUT OF REACH BECAUSE MOST OF THE DEFENDANTS WITNESSES DO NOT WORK
6) ON 3RD SHIFT WHEN THE LIGHT ARE ON MOST OF THE TIME OR WHEN THEY GET
7) CUT OFF LIKE IN (EXHIBIT D) SECTION 3
8)   IN SUM, THE DEFENDANTS STATE THERE IS NO EVIDENCE THAT POLICY OF PLACING
9) WRIGHT IN 23-HOUR LOCKDOWN CAUSED HIM TO SUFFER ANY DISABILITY OR HARM BEYOND
10) WHAT IS INCIDENT TO AN INMATE IN CUSTODY AWAITING TRIAL. NOR IS THERE EVIDENCE
11) THAT THE CONDITIONS OF WRIGHTS CONFINEMENT WERE IMPOSED TO PUNISH OR THAT THE
12) CONDITIONS IN CLOSED CUSTODY DEPRIVED WRIGHT OF LIFE NECESSITIES.
13)   1. FOR THE DISABILITIES ONE WOULD JUST HAVE TO READ COMMENTS TO ANY
14) MENTAL HEALTH PROVIDER OR FROM HIS EARLIEST GRIEVANCE IN 2012 ABOUT BEING LOCK IN
15) SOLITARY.
16)   2. PLAINTIFF WRIGHT WAS ONLY PLACED IN SOLITARY CONFINEMENT AS A
17) PUNISHMENT FOR HIS CHARGES. WHICH PLAINTIFF HAS CLEARLY SHOWN AND ADMINISTRATION
18) HAS ADMITTED
19)   3. DEFENDANTS DID NOT DEPRIVE WRIGHT OF LIFE'S NECESSITIES
20) PLAINTIFF WRIGHT IS NOW IN G-P AND CAN COMMUNICATE FACE TO FACE WITH OTHER
21) PRE TRIAL DETAINEES, CAN SHAKE ANOTHER HUMAN BEINGS HAND, CAN LAUGH AT WHATS
22) ON T.V (NEVER SEEN T.V FOR 9 YEARS) AND CAN HAVE A CLASS SETTING, WHETHER
23) IT'S RELIGIOUS OR COGNITIVE (NOT OFFERED UP STAIRS) WITH OTHERS AT THE SAME TIME
24) THESE ARE JUST A FEW THINGS THE PLAINTIFF WILL SHOW THE JURY DURING TRIAL THAT SHERIFF
25) PAUL PENZONE AND CPT VAIL COULD OF ALLOWED THIS PLAINTIFF YEARS AGO TO BE ALLOWED IN
26) G-P NOW THIS PLAINTIFF CAN HAVE MORE TIME TO FIGHT HIS CASE JUST FROM HAVING
27) MORE PHONE TIME TO FIGHT ONE OF THE LONGEST CASE'S IN MARICOPA COUNTY HISTORY WERE
28) PLAINTIFF'S HAS BEEN DENIED HIS SPEEDY TRIAL RIGHTS
29)
30) 4. WRIGHT's HEALTH BOTH PHYSICALLY AND MENTALLY HAS BEEN DAMAGED
31) BEYOND REPAIR. PLAINTIFF HAS 1ST HAND KNOWLEDGE OF PEOPLE HE COMMUNICATED
32) WITH THROUGH THE VENTS COMMITTING SUICIDE THAT IS DOCUMENTED IN MY
33) MENTAL HEALTH RECORDS PLAINTIFF WRIGHT LOST LOVE ONE'S A CHILD, A BROTHER
34) A UNCLE AND WAS DENIED A PHONE CALL ON ALL EXCEPT ONE, THESE ALONE WITH A
35) MOST OF OTHERS PAINTS JUST ANOTHER PICTURE OF EXTRA PUNISHMENT WHILE BEING
36) PUNISHED.
37)   DEFENDANTS CLAIM THAT VAIL DID NOT RESPOND TO ANY GRIEVANCES
38) FROM WRIGHT ASKING TO BE MOVED OUT OF CLOSED CUSTODY
39) EVERY TANK ORDER WRITTEN TO CPT VAIL WAS RELATED TO CLOSED CUSTODY AND
40) CPT VAIL AND/OR HIS DISIGNEE DID INFACT RESPOND TO MY GRIEVANCES PLEASE
41) (EXHIBIT E) SECTION 1 GRIEVANCE # 17-24387 CAPTAIN VAIL / TANK ORDER SIGNED
42) 5/10/18 CAPTAIN VAIL RESPONDS / GRIEVANCE # 18-006756 CAPTAIN VAIL
43) RESPONES WITH HIS OWN WRITING AND SIGNATURE AGAIN / GRIEVANCE # 18-008715
44) CAPTAIN VAIL HAS A DISIGNEE ANSWER THIS ONE BUT AS CAPTAIN, SHOULD STILL HAVE BEEN INFORMED

D. VAIL IS ENTITLED TO QUALIFIED IMMUNITY

THE COURTS HAVE HELD WHEN AN OFFICIAL CLAIMS QUALIFIED IMMUNITY, THE
COURT MUST GENERALLY DETERMINE WHETHER THE LAW WAS CLEARLY ESTABLISHED AT THE
TIME THE DEFENDANT COMMITTED THE ALLEGEDLY ILLEGAL ACTS

1) Here the defendants use case law in ANDERSON, 45 F.3D AT 1316
2) (Confinement to cell 23-hours a day is condition contemplated by imprisonment)
3) HAMPTON, NO. CV 03-1706-PHX-NVW, 2006 WL 3497780, AT *10 - *11 (Confinement of
4) prisoner in solitary confinement for eight years did not violate eight amendment
5) where prisoner had access to visitation, telephone calls, send and recieve letters
6) have access to library materials, and could communicate with inmates in other
7) cells
8) The defendant failed to note that plaintiff Wright is not a convicted
9) felon but a pre-trial detainee, that can not afford his bond and affords
10) different right then convicted felons, more over his 14 amendment was
11) violated clearly. Even so the plaintiff has to find a prior case holding the
12) defendants' exact actions unconstitutional
13) ANDERSON v. CREIGHTON, 483 U.S. 635, 640, 107 S. CT. 3034
14) (1987); see also HOPE v. PELZER, 536 U.S. 730, 739-40, 122 S.CT. 2508 (2002) (Officials
15) can be on notice that their conduct violates established law even in "novel
16) circumstances"; courts need not have held that fundamentally similar" conduct
17) was unlawful to defeat qualified immunity.
18) Officials are expected to use common sense in assessing their legal obligations.
19) GIEBEL v. SYLVESTER, 244 F.3D 1182, 1189 (9TH CIR 2001) (Holding that "even if there is no
20) closely analogous case law, a right can be clearly established on the basis of common
21) sense."); SEPULVEDA v. RAMIREZ, 967 F.2D 1413, 1416 (9TH CIR. 1992) (Officer was not immune
22) for conduct that "runs contrary to common sense decency," and state regulations.
23) The plaintiff's 14TH Amendment right to be free from arbitrary risks of serious
24) personal injury during pre-trial detainment
25) WILLIAMS v. LANE, 851 F.2D 867, 882-83 (7TH CIR 1988) (Lack of a rational basis for
26) various restrictions in protective custody defeated qualified immunity
27) McMILLIAN v JOHNSON, 88 F.3D 1554, 1565 (11TH CIR. 1996) where punishment of
28) pretrial detainees was generally forbidden, transferring a detainee to death
29) row for punitive reasons was not protected by immunity despite lack of prior
30) case in point;
31) Here the plaintiff was placed in a more secured enviroment then death row
32) for punitive reasons ONLY. If the incident in questioned, happened on July
33) 28, 2010 and plaintiff Wright was booked in Maricopa County Jail on Nov 16, 2010
34) in G-P then only after plaintiff was paced 2'D (and not found guilty of anything)
35) it's only then was plaintiff placed in a worse setting then being locked
36) down in death row. You only communicate with others in the vent by screaming.
37) It is inhumaine. All other conditions of confinement have been pointed out in
38) plaintiffs respond to oppose defendants summary judgment.
39) V. CONCLUSION
40) Plaintiff has clearly shown evidence in (EXHIBIT D) Section 1 that
41) plaintiff tried to exhaust grievance and exhibit A shows at the highest level all
42) should of known about housing issue and conditions of confinement that the
43) sheriffs counsel adviced plaintiff that a 1983 civic complaint was his only action

I declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.

Respectfully submitted Sept 22, 2019
By: ANTHONY J. WRIGHT (P715875)
*Anthony J. Wright*

(11)

# MARICOPA COUNTY SHERIFF'S OFFICE

## CERTIFICATION

I hereby certify that on this date _____ September 25, 2019 _____

I mailed the original and one (1) copy to the Clerk of the United States District Court, District of Arizona.

I further certify that copies of the original have been forwarded to:

___ Hon _____ United States District Court, District of Arizona.

___ Hon _____ United States District Court, District of Arizona.

___ Attorney General, State of Arizona, _____

___ Judge _____ Superior Court, Maricopa County, State of Arizona.

___ County Attorney, Maricopa County, State of Arizona   Maxine Mak & Charles Trullinger

___ Public Defender, Maricopa County, State of Arizona _____

___ Attorney _____

√ Other   Richard A Bailey, 5010 E Mesquite Wood Ct, Phoenix, AZ 85044

√        Sarah Lynn Barnes, Broening Oberg Woods & Wilson PC, 2800 N Central Ave., Ste. 1600, Phoenix, AZ 85004

___

_a. Callaghan_                B3853
Legal Support Specialist Signature    S/N

INMATE LEGAL SERVICES
Maricopa County Sheriff's Office
3250 W. Lower Buckeye Rd.
Phoenix, AZ 85009